

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

Signed September 1, 2005                                     United States Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| PEGGIE JOYCE HOLCOMB, | § | CASE NO. 04-83682-BJH-7 |
| Debtor. | § | |
| INWOOD NATIONAL BANK, | § | |
| Plaintiff, | § | ADV. PRO. NO. 05-3077-BJH |
| - against - | § | |
| PEGGIE JOYCE HOLCOMB, | § | |
| Defendant. | § | |

### Memorandum Opinion and Order

Before the Court is a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012. For the reasons stated

below, the motion is granted and the complaint is dismissed.

**Procedural Background**

On March 17, 2005, Inwood National Bank ("Inwood") timely filed its complaint (the "Initial Complaint") to determine the dischargeability of debt allegedly owed to it by Peggie Joyce Holcomb (the "Debtor"). The Initial Complaint alleged causes of action under 11 U.S.C. § 523(a)(2) and (a)(4). On May 2, 2005, the Debtor moved to dismiss the Initial Complaint for its failure to state a claim upon which relief may be granted (the "Motion"), and Inwood opposed the Motion. At the hearing on May 31, 2005, the Court denied the Motion on the condition that Inwood file an amended complaint by June 14, 2005.[1]

On June 9, 2005, Inwood filed its "First Amended Complaint Objecting to Dischargeability of Certain Debt" (the "Amended Complaint"), alleging that its debt was nondischargeable under 11 U.S.C. § 523(a)(2)(A).[2] Shortly thereafter, the Debtor filed her "Second Motion to Dismiss Complaints Pursuant to Fed. Rules [sic] Civ. Proc. Rule 12(b)(6) and Brief in Support of the Motion" (the "Second Motion"), which Inwood opposed. The Court held a hearing on the Second Motion on July 25, 2005, following which the Court took the Second Motion under advisement.

This Memorandum Opinion and Order contains the Court's analysis of the Second Motion. The Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I) and 1334.

**The Amended Complaint's Allegations**

Inwood alleges in the Amended Complaint that the Debtor "was a customer of Inwood and

---

[1] By agreed Order entered on May 2, 2005, Lynk Systems was given leave to intervene as an additional plaintiff in this adversary proceeding. In the Motion, the Debtor also sought the dismissal of Lynk Systems' complaint. Instead of dismissing its complaint, Lynk Systems was also given leave to amend. However, Lynk Systems subsequently elected not to do so, and agreed to the dismissal of its complaint.

[2] Inwood did not re-plead a claim under 11 U.S.C. § 523(a)(4).

**Memorandum Opinion and Order** Page 2

maintained her business accounts for Derward Nollner & Associates, Inc. ("Nollner")[3] at Inwood." Compl. ¶ 5. Inwood further alleges that: (i) the Debtor was a wholesale furniture representative who took orders for custom furniture from individuals and businesses, *id*. at ¶ 6, (ii) at the time of a furniture order, the Debtor would take a deposit for one-half of the purchase price for the furniture ordered, often by credit card, and that the "credit card deposits were credited to Debtor's account at Inwood upon which Debtor had the ability to draw," *id*., (iii) some of the deposits related to furniture orders which "went unfilled or undelivered by Nollner," and that when Nollner's customers learned that the business had closed and their orders would not be filled, they filed "chargebacks" with their credit card companies, which Inwood has been required to honor (in the amount of $81,817.46 as of June 7, 2005) (the "Chargebacks"), *id*. at ¶¶ 8-9, and (iv) the Debtor knowingly accepted credit card deposits for furniture she knew would not be delivered by Nollner, and deposited them into Nollner's account at Inwood, resulting in the Chargebacks, *id*. at ¶ 9.[4] Inwood alleges that these credit card deposits were obtained by false pretenses, false representations, and actual fraud. Inwood therefore asserts that the deposit of funds for undelivered furniture, resulting in the Chargebacks, constitutes actual fraud which renders the Debtor's debt to Inwood non-dischargeable under 11 U.S.C. § 523(a)(2).

Inwood also alleges that Nollner borrowed monies from Inwood which were secured by an assignment of the Debtor's deposit account and a security agreement pledging Nollner's accounts receivable, general intangibles, furniture and equipment. *Id.* at ¶ 7. Following liquidation of this

---

[3] The Debtor lists ownership of 100% of the stock of Nollner on Schedule B to her petition. The Court can take judicial notice of documents in the public record and can consider them on a motion to dismiss for failure to state a claim, *R2 Invest. LDC v. Phillips*, 401 F.3d 638, 640 n.2 (5th Cir. 2005), and can take judicial notice of the bankruptcy schedules. *In re Flores*, 208 B.R. 30 (Bankr. S.D. Tx. 1996).

[4] The Amended Complaint contains inconsistent allegations, blurring the distinction between the Debtor and Nollner, a separate legal entity. *See* n. 5, *infra*.

collateral, Inwood alleges that Nollner owes it a deficiency balance of $44,497.30, which the Debtor has guaranteed. *Id*. at ¶¶ 7, 10.

Finally, Inwood alleges that the Debtor paid herself $41,487.95 during the time when she was failing to complete orders, and that she also paid "$62,194.43 on her personal credit cards out of the Nollner account during the same time period that credit card charges were being credited to the Nollner account for orders which went unfilled . . . ." *Id*. at ¶ 9.

**The Legal Standard**

A complaint may not be dismissed for its failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must accept as true all well-pleaded allegations contained in the complaint, *Albright v. Oliver*, 510 U.S. 266 (1994), and must view them in the light most favorable to the plaintiff. *Woodard v. Andrus*, No. 04-30714, 2005 WL 1785386 at *2 (5th Cir. July 28, 2005); *Cinel v. Connick,* 15 F.3d 1338 (5th Cir. 1994). The facts pled must be specific, however, and not merely conclusory. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (stating that court will not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions). The issue on a motion to dismiss for failure to state a claim is not whether a plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claims. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629 (1999); *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004).

**Legal Analysis**

Section 523(a)(2)(A) provides that a discharge under section 727 does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or

refinancing of credit, to the extent obtained by –

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . .

11 U.S.C. § 523(a)(2)(A). To state a claim under § 523(a)(2)(A), the creditor must allege that: (i) the debtor made a representation describing past or current facts, (ii) the debtor knew the representation was false, (iii) the representation was made with the intent and purpose of deceiving the creditor, (iv) the creditor actually and justifiably relied on the representation, and (v) the creditor sustained a loss as a proximate result of its reliance. *In re Acosta*, 406 F.3d 367 (5th Cir. 2005). Thus, as relevant here, Inwood must allege a direct link between the Debtor's fraud and the creation of the debt owed to it – *i.e.*, that its debt is for money *obtained by* the fraud. 11 U.S.C. § 523(a)(2); *In re Spigel*, 260 F.3d 27 (1st Cir. 2001).

For the reasons explained more fully below, and based upon the allegations contained in the Amended Complaint, the Court concludes that Inwood has not alleged facts which establish a link between the creation of a debt owed to Inwood and the Debtor's alleged fraud. Here, the fraud alleged is that Nollner,[5] acting through its representative (the Debtor), accepted deposits on furniture

---

[5] Inwood repeatedly blurs the distinction between the Debtor and Nollner, a separate legal entity, throughout the Amended Complaint. For example, Inwood alleges that the Debtor took deposits from *her* customers in ¶ 6, but refers to *Nollner's* customers in ¶ 7. Similarly, the Amended Complaint refers to the *Debtor's* account at Inwood in ¶ 6, but to *Nollner's* account in ¶ 9. Inwood's failure to distinguish its relationships with Nollner from its relationships with the Debtor is a major flaw in Inwood's analysis of the legal issues surrounding its nondischargeability claim.

Moreover, the Amended Complaint also contains factual allegations which obscure the nature of the debt which the Debtor owes to Inwood. Inwood alleges that Nollner owes it approximately $44,000 on its loan, which the Debtor guaranteed. The Debtor does not dispute the fact that she guaranteed Nollner's debt to Inwood. But, that debt arises by contract, and there are no allegations in the Amended Complaint that Inwood's loan to Nollner was obtained by fraud or that Inwood was fraudulently induced in some fashion to accept the Debtor's guaranty.

While Inwood also alleges that the Debtor paid herself $41,000 during 2004 (presumably from Nollner's funds, although the Amended Complaint does not specify the source of funds) when she knew that Nollner was not completing its customer's furniture orders, Inwood does not allege how that affects the dischargeability of Inwood's guaranty claim against the Debtor. Even assuming these payments to the Debtor were improper, those improper payments would give rise to a claim against the Debtor by Nollner, not Inwood. Moreover, those funds are not alleged to have been obtained by the Debtor by a fraud practiced upon Inwood. The same is true with respect to the approximately $62,000 which the Amended Complaint alleges the Debtor withdrew from Nollner's account to pay her

**Memorandum Opinion and Order** **Page 5**

orders from Nollner customers when the Debtor knew that Nollner could not fill those orders. Taking the allegations in the Amended Complaint as true, the money which was allegedly obtained by fraud was the money Nollner obtained from its customers, not from Inwood.

In addition, the Amended Complaint does not allege any misrepresentation made by the Debtor *to Inwood*. Rather, the Amended Complaint alleges that the Debtor misrepresented Nollner's ability to complete furniture orders to Nollner customers when the Debtor knew that Nollner would not be able to fill those orders.

Moreover, because the alleged misrepresentation was made to Nollner's customers, not to Inwood, Inwood could not have actually, let alone justifiably, relied on such misrepresentations in its business dealings with the Debtor. *See Wymard v. Ali (In re Ali)*, 321 B.R. 685 (Bankr. W.D. Pa. 2005) (stating that creditor could not have relied on debtor's alleged misrepresentations to credit card company, which resulted in chargebacks to creditor).

Finally, Inwood fails to allege in the Amended Complaint that the Debtor intended to deceive *Inwood* when she made the misrepresentations to Nollner's customers.[6] For all of these reasons, the Court concludes that Inwood has failed to state a claim in the Amended Complaint upon which relief may be granted under § 523(a)(2)(A).

**Leave to Amend**

The Court need not grant leave to amend when (i) such relief is not requested, (ii) the plaintiff has failed to cure pleading deficiencies by amendments previously allowed, or (iii) amendment would

---

personal expenses.

[6] The Court also notes that the alleged fraud is not the proximate cause of Inwood's damages. Rather, the parties who were allegedly defrauded – *i.e.*, Nollner's customers, have already been made whole by their credit card companies. Inwood's alleged damages arise by virtue of its contractual arrangements with its account holder, and the Debtor's guaranty of Nollner's debt, not by virtue of the Debtor's alleged fraud.

be futile. *U.S. ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). Here, Inwood did not request leave to further amend the Amended Complaint. In fact, Inwood conceded at oral argument on the Second Motion that it would be unable to plead its allegations any differently than it has in the Amended Complaint, implicitly conceding that further amendment would be futile.

Accordingly, this adversary proceeding is dismissed with prejudice and without leave to amend the Amended Complaint further.

**SO ORDERED.**

# # # End of Order # # #